In the Matter of the Judicial Settlement of the Account of Proceedings of the UNITED STATES MORTGAGE AND TRUST COMPANY, as Executor, etc., of JOHN F. MAKLEY, Deceased Trustee of a Trust Created under the Last Will and Testament of JOSEPH MORY DAGGETT, Deceased.

Surrogate's Court, Westchester County, January 29, 1927.

**Trusts — fraud — claim that assignments to trustee of interests of remaindermen in trust were procured by fraud — assignments valid where evidence shows purchase was made following full disclosure of condition of trust estate at time of purchase — trustee may purchase interest of remaindermen of trust — presumption of fraud or undue influence overcome by evidence.**

On the judicial settlement of the account of the trustee herein, objections thereto filed by a remainderman under the will by which said trustee was appointed, and the legatee under the will of another remainderman, to the effect that certain writings purporting to be assignments by them to said trustee of all their interests in the trust, were procured by means of false and fraudulent representations made by said trustee, cannot be sustained, where the evidence shows that said assignments were made following a full disclosure to the contestants of all information concerning the trust and the beneficiaries thereof; that the transaction was free from fraud; and that the consideration given was adequate.

There is nothing to prevent a trustee from purchasing the interest of remaindermen in a trust, and though courts of equity scan such transactions with scrutinizing care and require the trustee to overcome the presumption of fraud and undue influence, this court must, of necessity, find that the assignments given to the trustee herein are valid, and that the presumption of fraud, arising from the purchase by him individually, has been overcome.

PROCEEDING for the judicial settlement of the account of a deceased trustee.

*Patterson, Eagle, Greenough & Day*, for the petitioner.

*Davis, Polk, Wardwell, Gardiner & Reed*, for the substituted trustee.

*Baldwin, Hutchins & Todd*, for Harry E. Daggett and Stanley P. Daggett, objectors.

*Hiram E. Todd* and *E. Raymond Shepard* of counsel.

*White & Case*, for The American National Red Cross.

SLATER, S. The account is dated November, 1926, and does not deal with payment of income since the remarriage of the life beneficiary. The will of Joseph Mory Daggett created a trust for his wife, Florence M. Daggett, " so long as she shall live or

until her re-marriage. If my said wife shall re-marry, then and in that event I will and direct that my said trustee shall pay to my said wife from her said re-marriage one-third only of the said net income so long as she shall live, and one-third of said net income to my brother, Harry E. Daggett, and one-third of said net income to my sister, Ida F. Daggett, so long as my said wife shall live. In case of the death of my said wife leaving issue of our marriage, then I give devise and bequeath all of the rest, residue and remainder of my estate to my said issue equally, share and share alike.

" Upon the death of my said wife without such issue, I direct my executor and trustee to divide the said rest, residue and remainder of my estate equally between my said brother, Harry E. Daggett, and my sister, Ida F. Daggett."

The will appoints the father-in-law, John F. Makley, the executor of the will and trustee of the trust therein created. There was no issue of the marriage of Florence M. Daggett and the decedent.

Said Ida F. Daggett died December 5, 1917, leaving a will admitted to probate in the Probate Court of Cook county, Ill., June 27, 1918, by which she devised and bequeathed all the rest, residue and remainder of her estate, which included any money or property she might receive under the will of Joseph Mory Daggett, to her brother, Harry E. Daggett, and Stanley Putnam Daggett, her half-brother, share and share alike.

The account sets forth that Harry E. Daggett, remainderman, by an instrument dated April 5, 1926, assigned, transferred and sold all his interest in and to the remainder of said trust, namely, three-fourths thereof, to John F. Makley, and that Stanley P. Daggett, one of the legatees mentioned in the will of Ida F. Daggett, remainderman mentioned in the will of the decedent, by an instrument dated April 8, 1926, assigned and transferred all his interest in and to one-fourth of the remainder of said trust estate to John F. Makley. The said John F. Makley, the purchaser, was at the time trustee of the trusts under the decedent's will.

John F. Makley died June 21, 1926, aged seventy-eight years, leaving a last will and testament admitted to probate in the Surrogate's Court of the county of New York, and letters testamentary thereon were duly issued to the United States Mortgage and Trust Company. Florence M. Daggett, the life beneficiary of the trust, was married to Harry Anderson August 24, 1926. Florence M. Daggett was in the year 1926 about forty-six years of age. Harry Daggett was seventy years of age and Stanley Daggett was twenty-four years of age.

So much for the facts.

Objections to the account have been filed by Harry E. Daggett and Stanley P. Daggett on the ground that said paper writings purporting to be assignments by them to John F. Makley of all their interest in the trust created under the will of Joseph M. Daggett were procured by means of false and fraudulent representations made by said Makley to the contestants. The only issue presented to the court relates to the one of fraud in the procuring of the two assignments above referred to. The charge of fraud is based on two grounds: *First*, that Makley represented to the attorney for the contestants that his daughter, said Florence M. Daggett, the beneficiary of the trust, had no intention of remarrying, whereas in fact said Makley then well knew that she did intend to remarry; and the said statement was made to the contestants with the intent of inducing the execution of the assignments; upon the further ground, permitted by the court upon the trial to be filed as an objection, that the full and adequate value of the trust estate was concealed, or fraudulently stated to the contestants.

A consideration of $15,000 was paid by Makley to Harry E. Daggett, and $5,000 was paid to Stanley P. Daggett. The two assignments were offered and received in evidence. The sellers made their transfer in the following words: "All the right, title and interest of every nature and description which I now have, or may hereafter acquire, or become vested with in the trust provided by and set up pursuant to the Last Will and Testament of Joseph Mory Daggett, deceased."

If the assignments had not been made, upon Florence M. Daggett's remarriage the contestants would have become entitled to receive two-thirds of the income of the trust estate, and upon her death, the entire fund.

Were the transactions free from fraud and was the consideration given adequate?

There is no rule of law that prevents a trustee from purchasing the interest of the remainderman of a trust, but courts of equity scan such transactions closely and require the trustee to take the burden of proof and overcome the presumption of fraud and undue advantage. In the instant case, was the purchase made following a full disclosure of all information? Did the sellers have all information? The assignments are not voidable at the mere election of the beneficiary with the return of the money paid, but can only be set aside by the judgment of a court on the ground of fraud and unfairness. (*Anderson* v. *Fry*, 123 App. Div. 46; affd., 194 N. Y. 515; *Graves* v. *Waterman*, 63 id. 657; *Davoue* v. *Fanning*, 2 Johns. Ch. 252.)

The record evidence, letters, extend from May, 1919, to the

Misc. 588]     Surrogate's Court, Westchester County, January, 1927.

time of the two assignments, May, 1926; the first letter coming to Mrs. Daggett from Stephen C. Knight, an attorney in Chicago, written on behalf of Harry E. Daggett, dated May 2, 1919, asking "whether you would be interested in buying up his interest and thus releasing the trust to the extent of his interest."

The second letter was written by Harry E. Daggett, from Chicago, Ill., where he resides, on June 4, 1919, addressed to Mr. Makley, and says in part: "I had Mr. Knight write some time ago to your daughter, Mrs. J. Mory Daggett, concerning the matter of buying out my interest in the estate.   *   *   *   I have now and have had for some time back several reasons for wanting to dispose of my interest of Mory's estate, and among them is the fact that I am carrying an exceedingly heavy load in the way of real estate   *   *   *   I understand that in all probability I would never realize anything personally out of this estate, but simply remain as a block to your daughter's full enjoyment of the whole. Under all the circumstances, I would much prefer to dispose of my interest now at whatever it may be reasonably worth, providing your daughter may so wish."

Again, in April, 1920, Harry E. Daggett writes Mr. Makley and says: "Now, Mr. Makley, if you ever did a good turn in your life you can do one now, that is, make a compromise and let me have the benefit of my brother's will while I am alive.   *   *   *   I see no reason why we cannot get together on this subject ourselves and not require the services of lawyers. I do hope that we can come to some understanding."

Another letter from Harry E. Daggett in June, 1920, deals with an effort to borrow money from Mr. Makley.

In February, 1918, Mr. Makley writes Mr. Daggett regarding the estate, reciting that Mrs. Daggett, the life beneficiary, was in good health, and talked about his trusteeship, and that there would probably be a vacancy before the life beneficiary died on account of his own age; speaks about the reduction in the value of assets; and that there were a good many things he would like to talk over and wished that Mr. Daggett would find it convenient to come east.

In July, 1920, Mr. Makley wrote again to Mr. Daggett saying that he had talked with Florence and put the conditions before her "according to your desires;" that "the income is now a fixed amount and will continue so as Florence has no intention of marrying again."

In November, 1920, Mr. Makley wrote regarding a loan from the trust fund, which he declined to make to Mr. Daggett, and said: "The only way it seems to me is for you to come east and see Mrs. Daggett, senior, and Florence, when I believe you could

Surrogate's Court, Westchester County, January, 1927.          [Vol. 128

make a liberal settlement and get much needed cash from the estate. In so doing you would advance your interest, otherwise you will probably never receive anything from the estate. Florence is in perfect health and will never re-marry. * * * Therefore, the matter is tied up for an indefinite period of time. This letter must in no way be considered official, but is simply answering that part of your letter alluding to the estate and giving you my personal views. In closing I simply state, in a strictly personal way, that I believe the matter can be adjusted by you taking the initiative."

Next, we find a letter from Alexander & Green, attorneys for the two Daggetts, represented by Mr. Bourne of that firm, who was also a witness in this proceeding. It is addressed to Mr. Oliver B. Goldsmith, then representing Mr. Makley, the trustee, and is dated July 10, 1924. The letter is as follows:

" As you know, there have been suggestions from time to time that Mr. Makley purchase the remainder interests of Harry E. Daggett and Stanley P. Daggett in the trust set up by the will of Joseph M. Daggett. As Stanley Daggett is now over twenty-one years of age, there is no longer any impediment to such a sale, if the parties are agreed that it is in their interest.

" Both Mr. Harry E. Daggett and Stanley P. Daggett have advised me that they are willing to dispose of their interests if they can obtain a reasonable price therefor. I should be glad to know whether Mr. Makley is inclined to make the purchase.

" It occurred to me as a tentative suggestion that possibly Mr. Makley could make an informal statement of the assets of the trust fund as at present constituted, and that the interest of the life tenant could be computed on the insurance principles in somewhat the same manner as it is computed for the purpose of transfer taxes, and that Mr. Makley might be willing to purchase the remainder interests at something in the neighborhood of the difference between the principal of the trust fund and the value of the interest of the life tenant as thus computed. We can discuss this matter in more detail if Mr. Makley desires to purchase.

" Or if he wishes to let us know Mrs. Florence Daggett's age and to make an offer for the interests of the remaindermen, we shall be glad to submit the same to our clients for their consideration."

Mr. Goldsmith replied and sent a memorandum of the assets composing the capital of the trust, under date of July 14, 1924, amounting to $62,950, stating that it paid an annual income of $3,600. Apparently there had been consultation between the attorneys for the parties. In fact, it was referred to in the letter of October 27, 1925, from Mr. Makley to Mr. Daggett, wherein he says: " After looking the matter over I have concluded to

Misc. 588]     Surrogate's Court, Westchester County, January, 1927.

personally make you a proposition, namely, that you and Stanley make a complete and legal assignment of what interest you two now hold in the Daggett estate.   Also, that you make a complete surrender of all the interest you may now or hereafter hold.   For said assignment to me, I will personally pay you $17,000.00.   The legal rate of interest upon the same would amount to $1,020.00 yearly.   Or, if you would prefer to wait three years, if stocks and securities remain where they now are, you will be entitled to $20,000.00.   I make no promise to do it at that time.   The only promise I do make is that, if it be your desire to discontinue your interest in the estate and receive therefor $17,000.00 cash, make out your legal papers and forward them.   Otherwise allow the matter to remain where it is now until Mrs. Daggett's death.   I will pay Mrs. Daggett a regular income during my lifetime and leave the principal to her at my death."

The decedent's estate was inventoried November 23, 1916, at $83,847.89, consisting of securities, wearing apparel, automobiles and farming utensils.   Mr. Makley, as executor, accounted June 4, 1919, showing a balance of capital of $74,027.97.   In the meanwhile Ida F. Daggett died and Harry E. Daggett, individually and as executor, was cited to appear upon the accounting.   So, also, was Stanley P. Daggett, who appeared by special guardian. The accounting proceeding of 1922 extended over a period of time from February, 1922, until date of decree December 23, 1922. During the pendency of this proceeding, Stanley P. Daggett arrived at the age of twenty-one years and duly appeared therein and said Harry E. Daggett was represented by Alexander & Green, attorneys.   Certain objections were made by them in connection with the apportionment of stock dividends, the objections were sustained and certain amounts were allocated to the capital account.   This indicates quite clearly that Stanley and Harry Daggett, as well as their counselor, were quite familiar, must have been familiar, with the items of assets as they existed in 1922.   At this time the balance of principal in the hands of the trustee amounted to $67,115.39.

In July, 1924, we find Messrs. Alexander & Green, representing the Daggetts, communicating with Mr. Goldsmith, the attorney for Mr. Makley, the trustee, and the negotiations leading up to the actual assignments must have been continued and pending for nearly two years before the sale was consummated.

Edward W. Bourne, an attorney and counselor at law, associated with the well-known law firm of Alexander & Green of New York city, testified regarding their employment by Harry and Stanley

Daggett to act for them in the accounting proceeding by Mr. Makley, as executor, wherein decree was entered dated December 23, 1922; that, on March 17, 1926, he discussed with Mr. Makley a number of things regarding the sale by the Daggetts. " I said I did not suppose there was any likelihood of Mrs. Daggett remarrying, and he (Makley) either said ' No ' or said nothing." In answer to the court's question, the witness testified: " We had previously undertaken to conduct these negotiations and at that time I had gone into the subject quite fully with Stanley Daggett and, by mail, with Harry Daggett, and what I thought about it as a business proposition." It appears that the witness discussed with Stanley Daggett the probability of the remarriage of Florence. Stanley lived in New York city. Stanley testified: " We took what precautions we thought we could." In fact, a detective was employed at Stanley Daggett's suggestion and the report of the detective was offered in evidence, dated March 25, 1926. The detective was able to get into the home and talked with one of the maids and the maid said with reference to Mrs. Daggett's remarriage, she did not think she would remarry. Stanley Daggett testified that he saw the detective's report prior to the execution of the assignments, and that: " We had already practically made our decision as to whether or not we would sign it over, and we did that at the last minute while they were drawing up the papers; and that, in coming to the agreement the question of remarriage was taken into consideration fully as much as her question of age and that it was all considered; that our lawyer had all the figures regarding Mrs. Daggett's expectancy of life according to the life tables, and while he did not advise me to do it, he gave me all the information and left it to my brother and myself to decide; " that " figures did not come from Mr. Makley, but were made up by Mr. Bourne."

There had been accountings in this court prior to the date of the assignments in which Mr. Bourne, the counselor, had appeared for Harry and Stanley Daggett. In fact, objections were made to the account and a certain amount of extraordinary dividends which had been allotted to income were placed in the principal account because of the objection of the Daggett brothers, and the special guardian for the then infant Stanley. The assets of the estate were then, and had been well known to their able counselor, and to themselves. While the items in the accounts were carried at the inventoried value, they had access to financial papers and were able to learn the accurate market value of the securities from time to time.

It cannot well be said that they were improperly and fraudulently

led into believing that the estate was of less value than it actually was, or is to-day. This is not the case where parties get together, and the seller relies upon the statements made by the buyer. The activities of the sellers extended over a period of years, and during the last two or three years the sellers were represented by eminent counsel. Again, no man, even a father, can speak for a woman, or a daughter, to say whether she intends to marry, or to remarry, with any degree of confidence. The father, trustee, could speak with no more accuracy as to the daughter's remarriage than he could with regard to her death. In my judgment the seller never relied upon the father's statement. The best precaution known to the sellers was taken. They acted on information obtained by themselves and with the advice of their attorney. They took the business risk and chance and received $20,000 consideration for the two assignments. They relied upon their own efforts, their own knowledge of the value of the estate, and not upon any statement made by Makley.

It is the opinion of the court that there was no affirmative act of fraud or deceit practiced by Mr. Makley. The transaction was free and fair. The court finds and adjudges that said two assignments are valid, legal and binding as to the trust estate in remainder; that the trustee has overcome the presumption of fraud or undue advantage arising from the purchase by a trustee individually.

The substituted trustee is in doubt as to the persons entitled to receive the income from the trust estate subsequent to the marriage of Florence M. D. Anderson on August 24, 1926. The court at this time will not attempt to solve the question relating to the disposition of such income. We are now dealing with allegations of fraud as a matter of fact in the making of the two assignments, and not with questions of law which may cause them to be void in part as a matter of law.

Any party hereto may apply at the foot of the decree to be entered herein for further direction, advice, order or decree with regard to the effect or force of the assignments herein referred to as to the income accruing from said trust estate since August 24, 1926, and its payment.

In accordance herewith, submit decree, on notice to all attorneys appearing.